FILED

06/10/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 21-0125

### SYNOPSIS OF THE CASE

**2021 MT 149**, DA 21-0125: **BOB BROWN, DOROTHY BRADLEY, VERNON FINLEY, MAE NAN ELLINGSON, and the LEAGUE OF WOMEN VOTERS OF MONTANA,** Petitioners v. **GREG GIANFORTE, Governor of Montana,** Respondent, and **MONTANA STATE LEGISLATURE,** Intervenor and Respondent.[1]

The Montana Supreme Court today upheld the constitutionality of SB 140. SB 140 is a recently enacted law that abolished the Judicial Nomination Commission, the commission that was responsible for screening applicants for vacancies on the Supreme Court and District Courts and forwarding nominees to the Governor for appointment to those vacancies. SB 140 replaced the Commission with a process that allows the Governor to consider any applicant who received a letter of support from at least three adult Montana residents during a prescribed public comment period.

The Judicial Nomination Commission was created by the 1973 Legislature in response to the enactment of Article VII, Section 8(2) of the 1972 Montana Constitution, which provides that "[f]or any vacancy in the office of supreme court justice or district court judge, the governor shall appoint a replacement from nominees selected in the manner provided by law." The Petitioners contended that Article VII, Section 8(2) required the creation of a separate commission or committee to screen applicants for judicial vacancies. The Petitioners argued that the purpose of Article VII, Section 8(2) was to ensure the appointment of quality judges who were free of political influence, and that the abolishment of the Commission violated that purpose by giving unfettered discretion to the Governor for appointing justices and judges. Respondents argued that the plain language of Article VII, Section 8(2) gave the Legislature the discretion to prescribe the manner in which justices and judges are appointed and did not require an independent commission to screen applicants.

The Court agreed with Petitioners that the purpose of Article VII, Section 8(2) was to ensure the appointment of good judges, and that the intent of the Framers of the Constitution had to be properly considered in determining a provision's constitutionality. After reviewing the transcripts from the Constitutional Convention, however, the Court concluded that neither the plain language of Article VII, Section 8(2), nor the Framers' intent indicated that Article VII, Section 8(2) required an independent commission to screen applicants. Rather, the language of Article VII, Section 8(2) was a compromise among some Constitutional Convention Delegates who wanted a commission, and others who wanted to give more discretion to the Governor. The compromise delegated the process for making judicial appointments to the Legislature. Although the Court acknowledged that the Commission created by the 1973 Legislature had honored the constitutional objective of recruiting good judges to serve the citizens of Montana for the past forty-eight years, it was not the Court's function to determine whether the Commission was a better process than SB 140 for making judicial appointments—it was to determine whether SB 140 complied with the language and constitutional intent of Article VII, Section 8(2). The Court held that it does.

Justice Rice wrote a separate concurring opinion to condemn "the extraordinary, indeed, extraconstitutional, actions taken by the Legislature and the Department of Justice during . . . this

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

proceeding." Justice Rice addressed at length the failure of the Legislature and the Department of Justice to "demonstrate a proper understanding of the Judiciary's constitutional authority." He addressed the historical importance to our constitutional system of government that requires each branch of government to respect the other branches' constitutional authority, and the perils to our democracy when one branch of government ignores the constitutional separation of powers. Justice Rice also addressed the "duplicitous actions" engaged in by the Legislature's attorneys in their filings with this Court. Despite finding this conduct "dishonest and contemptuous," Justice Rice assessed the merits of the issue before the Court and concurred with the Court's decision that SB 140 is constitutional.

Justice McKinnon dissented from the Court's decision. She concluded that SB 140 violated the plain language of Article VII, Section 8(2), which requires that "nominees [be] selected." Justice McKinnon would hold that SB 140 establishes only an application process that is not a merit-based selection process as required by Article VII, Section 8(2). Noting that when interpreting constitutional provisions, the intent of the Framers is controlling, Justice McKinnon discussed Montana's history of political corruption, executive overreach into the courts, and the constitutional provision itself, and would hold that applying well-established rules of construction for determining the Framers' intent in reviewing Constitutional Convention Notes, prior legislative determinations regarding the Framers' intent, and this Court's precedent lead to a conclusion that SB 140 is unconstitutional. Justice McKinnon concluded that the Framers of the 1972 Constitution intended to limit the Governor's plenary power to make judicial appointments which existed under the 1889 Constitution. Justice McKinnon noted that at the core of the Framers' convictions was an intent to preserve the integrity and independence of Montana's judiciary, and to ensure that power was not disproportionately placed in one branch of government. Justice McKinnon concluded that SB 140, because it gives plenary power to the Governor to appoint judges from self-nominated applicants without an independent merit-based vetting process, is inconsistent with the Framers' intent, and violates Montana's Constitution.